UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Barbara A. Patrick and Wendell B. Patrick, Sr.,
individually and as co-trustees for the heirs and
next of kin of Wendell B. Patrick, Jr., deceased,

      Plaintiffs,

v.                                           Civ. No. 03-6133 (JNE/JSM)
                                             ORDER

Officer D. Lewis, Officer Jonathan Wilson,
and Officer Lisa Chmelar,

      Defendants.

---

Eric W. Hageman, Flynn Gaskins & Bennett, LLP, appeared for Plaintiffs Barbara A. Patrick and Wendell B. Patrick, Sr.

Paul D. Reuvers, Iverson Reuvers, LLC, appeared for Defendants Officer D. Lewis, Officer Jonathan Wilson, and Officer Lisa Chmelar.

---

      Barbara Patrick and Wendell Patrick, Sr., (collectively, Plaintiffs) brought this action against Officers D. Lewis, Jonathan Wilson, and Lisa Chmelar (collectively, Defendants) under 42 U.S.C. § 1983 (2000).[1] Plaintiffs allege that Defendants violated the Fourth and Fourteenth Amendment rights of Wendell Patrick, Jr., (Patrick) by failing to seek medical attention for Patrick during his arrest and detention. The matter is before the Court on Defendants' motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

---

[1] Plaintiffs stipulated to the dismissal of Counts Two and Three of their Second Amended Complaint.

## I.  BACKGROUND

On June 7, 2003, Patrick lost control of his motorcycle on a highway and slid into a ditch. An off-duty police officer was the first on the scene. He witnessed Patrick walking around and testified that "[o]ther than the scrapes and abrasions on his face and arms, [Patrick] did not appear to be injured." The off-duty officer attempted to render first aid, but Patrick refused. When Officer Lewis arrived on the scene, Patrick was standing next to his motorcycle.[2] Paramedics from North Memorial Hospital offered medical treatment, but Patrick refused. Ultimately, the paramedics convinced Patrick to allow a brief examination. Patrick walked over to the ambulance on his own. The paramedics took his blood pressure, pulse, and cleaned a cut on his head. The paramedics concluded that Patrick's abrasions were "superficial" and did not require sutures. They also listened to his lungs, palpated his chest and abdomen, and checked the movement of his extremities. The paramedics recommended to Patrick that he allow them to take him to the hospital to be evaluated and to clean and check his abrasions. Patrick refused numerous times. At one point, Officer Lewis entered the ambulance and encouraged Patrick to go to the hospital. Patrick again refused.

After signing a Release of Treatment and/or Transportation Against Medical Advice Form, Patrick was released to the custody of Officer Lewis. Officer Lewis knew that Patrick had refused transport to the hospital and understood that the paramedics had not diagnosed Patrick's medical condition. A paramedic testified he never advised the officers that there was an immediate need to take Patrick to the hospital or that he thought Patrick was unable to care for himself. Officer Lewis administered a preliminary breath test to Patrick, which revealed a blood-

---

[2]  Defendants have submitted a videotape of portions of Patrick's arrest and booking, including footage at the scene of the accident and the detention facility.

alcohol concentration of 0.224. Patrick was placed under arrest for driving while intoxicated and transported to the Brooklyn Park Police Department.

At the police department, Officer Lewis took additional breath samples. Both Officers Lewis and Wilson were with Patrick during the breath test. At one point, Patrick asked for a bed. His second sample registered a lower breath volume than his first and Patrick failed to blow a strong enough air sample three times before completing the test. At one point during the test, Patrick made a brief "moaning" sound.

In the booking area, Patrick was given a chair while Officers Lewis and Wilson reviewed a medical screening form with him. The purpose of the form was to assess whether Patrick needed medical attention. As part of a series of questions, Officer Lewis asked Patrick if he needed any medical attention. Patrick answered "No." At one point during the questioning, Patrick stated, "I'm about to pass out," and indicated that he was experiencing pain in his shoulder. Officer Wilson gave Patrick an ice pack. While being fingerprinted, Patrick again indicated that he was experiencing pain in his shoulder. Although Patrick winced or moaned a few times, the videotape reveals that Patrick's "moans" were neither loud nor persistent. Throughout the booking process, Patrick was able to stand, walk, and follow instructions. Patrick cooperated with the officers and never requested medical attention.

At about 5:45 p.m., Office Wilson escorted Patrick to his cell. Officer Wilson informed Officer Chmelar, who was on the overnight shift, that Patrick had been booked for driving while intoxicated, was involved in a motorcycle accident, was seen by North Memorial paramedics, had refused further medical attention, and had been given an ice pack. Officer Chmelar was also told by a detective that she was to contact her supervisor if Patrick asked for medical assistance. Officer Chmelar completed her cell checks every fifteen minutes for the first hour after booking

and every thirty minutes thereafter. During these checks, Officer Chmelar witnessed Patrick switch sleeping positions, stand, get out of bed, sit up in bed, and snore. At approximately 9:43 p.m., Officer Chmelar responded to Patrick, who was calling out from his cell. Officer Chmelar testified that she believed he was standing by his bed, that she did not notice anything wrong with him, and that Patrick told her that he wanted to use the phone. Officer Chmelar testified that Patrick did not indicate that he needed medical assistance. She checked on Patrick at regular intervals throughout the night. In the early morning hours, an inmate two cells down from Patrick's heard someone call out for help and then a bang on a door. Officer Chmelar testified that she did not hear the call for help or the bang.

Officer Wilson returned to duty shortly before 6:00 a.m. on June 8, 2003. He commenced routine cell checks shortly thereafter. Officer Wilson testified that the cell door windows were closed and that he opened them during his first security round between 6:00 a.m. and 6:05 a.m. During his first security round, Officer Wilson testified that he observed Patrick "laying flat on his back with his hands straight out" and that it "looked like he wasn't breathing." There is evidence in the record that Office Wilson then went to assist another inmate make a telephone call, after which he notified Lieutenant Eckman of the situation in Patrick's cell.[3] Lt. Eckman testified that Officer Wilson notified him of the situation in Patrick's cell at 6:30 a.m.[4] Lt. Eckman and Officer Wilson entered Patrick's cell. Lt. Eckman determined that Patrick had no pulse and was not breathing. At 6:34 a.m., Lt. Eckman called dispatch to report a prisoner

---

[3] There is a specific policy prohibiting officers from entering prison cells without a supervisor.

[4] Defendants claim that Officer Wilson discovered that Patrick did not appear to be breathing at approximately 6:15 a.m. and that he immediately notified Lt. Eckman. The evidence in the record, however, is inconsistent on this point. For purposes of this motion, the Court must view the facts in the light most favorable to Plaintiffs.

was not breathing. Lt. Eckman performed CPR on Patrick. The paramedics arrived at 6:39 a.m. Despite their attempts to resuscitate Patrick, he was pronounced dead.

The Hennepin County Medical Examiner concluded Patrick died of complications of blunt force chest injuries sustained in a motorcycle crash. Specifically, the Medical Examiner concluded that Patrick had multiple rib fractures and torn lung tissue. Both lungs were collapsed. The Medical Examiner explained that the tearing of his lung could cause air to leak into his chest cavity, resulting in the eventual collapse of both lungs. The Medical Examiner's investigation indicates that the only external sign of Patrick's internal injuries was bruising on the upper-left side of his back and the back of his left upper-arm.

## I.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiffs assert claims under section 1983 for alleged violations of Patrick's Fourth and Fourteenth Amendment rights. Specifically, they assert Defendants failed to seek medical attention for Patrick during his arrest and detention. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Defendants deny Plaintiffs' allegations and assert that they are entitled to qualified immunity.

The doctrine of qualified immunity protects state actors performing discretionary functions from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When faced with an assertion of qualified immunity in a suit against an officer for an alleged constitutional violation, the court must first consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). If a constitutional violation could be established, the court then considers whether the right was clearly established. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A duty to render medical care is generally thought of as arising under the Due Process Clause or the Eighth Amendment. *See, e.g.*, *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *see also Salazar v. City of Chicago*, 940 F.2d 233, 241 (7th

6

Cir. 1991) (employing the "deliberate indifference" standard in assessing the actions of paramedics and police officers). At least one court, however, has recognized that alleged failures to provide medical care during a seizure or arrest are cognizable under the Fourth Amendment. *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596 (7th Cir. 1997) (holding that officers were objectively reasonable in handling plaintiff's medical situation during seizure); *cf. Boone v. Spurgess*, 385 F.3d 923, 933-34 (6th Cir. 2004) (explaining without deciding that "there seems to be no logical distinction between excessive force claims and denial of medical care claims when determining the applicability of the Fourth Amendment"). Plaintiffs have asserted Fourth Amendment claims against Officers Lewis and Wilson for their actions during Patrick's arrest and booking. The parties disagree over whether the Fourth Amendment properly applies. The Court need not decide the issue, however, because the Court concludes below that Officers Lewis and Wilson are entitled to qualified immunity for their actions during Patrick's arrest and booking under either standard.

**A.     Fourth Amendment**

Plaintiffs assert that Officers Lewis and Wilson violated Patrick's Fourth Amendment rights during his seizure and booking by failing to seek medical attention for him. Plaintiffs claim that Officers Lewis and Wilson knew of the severity of the motorcycle accident, that Patrick was intoxicated, that the paramedics on the scene had recommended to Patrick that he be evaluated at a hospital, and that Patrick was experiencing escalating pain. Plaintiffs claim that it was unreasonable for Officers Lewis and Wilson not to seek medical attention for Patrick. Defendants argue that Officers Lewis and Wilson are entitled to qualified immunity with respect to the seizure and booking of Patrick because their conduct was reasonable and there is no clearly established right to forced medical treatment.

7

Fourth Amendment claims are evaluated under a standard of "objective reasonableness." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Greiner v. City of Champlain*, 27 F.3d 1346, 1354 (8th Cir. 1994). Reasonableness must "be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. At the scene of the accident, Patrick was standing, walking, and communicating with Officer Lewis and the paramedics. Indeed, when Officer Lewis arrived, Patrick was standing next to his motorcycle. Patrick also denied numerous offers of medical aid before submitting to an evaluation by the paramedics and later denied transport to the hospital. There is no evidence that Officer Lewis was aware that Patrick suffered any internal injuries, let alone their nature and extent. Moreover, there is no evidence that Patrick's internal injuries were obvious. The only injuries observed on the scene were lacerations that the paramedics considered superficial. Other than these lacerations, Patrick did not complain to the paramedics of any pain. There were no signs of distressed breathing, his lungs sounded normal, and Patrick did not indicate pain in response to the paramedic's palpation. Finally, there is no evidence the paramedics advised Officer Lewis that there was an immediate need to take Patrick to the hospital or that he was unable to care for himself. On the record before the Court, Plaintiffs cannot establish that Officer Lewis's decision not to force Patrick to go to the hospital at the scene of the accident was unreasonable.

Plaintiffs also claim that Officers Lewis and Wilson acted unreasonably by not seeking medical aid for Patrick during the booking process. When Patrick arrived at the police department for booking, he had been briefly evaluated by the paramedics and had refused transport to the hospital. Although he was intoxicated, Patrick answered numerous questions and communicated with the officers. Patrick was able to stand, walk, and follow instructions. There

is evidence that Patrick was experiencing some pain or discomfort. For example, Patrick complained of a sore shoulder, said that he felt he might "pass out," and moaned or winced on several occasions. The videotape reveals, however, that Patrick's expressions of discomfort were neither loud nor persistent, and that for the most part, Patrick cooperated without difficulty or incident. Importantly, Patrick never asked for medical assistance and denied that he needed medical assistance when asked. In addition, Plaintiffs have not proffered any evidence that an officer in Officers Lewis' or Wilson's position should have known the extent of Patrick's injuries. Under the circumstances described above, it would have been reasonable to interpret Patrick's intermittent expressions of discomfort as related to minor injuries and intoxication. On the record before the Court, Plaintiffs cannot establish that Officers Lewis and Wilson acted unreasonably in failing to force medical care on Patrick during the booking process. Accordingly, Plaintiffs cannot demonstrate that Officers Lewis and Wilson violated Patrick's Fourth Amendment rights.

Even if Plaintiffs could demonstrate that Officers Lewis and Wilson violated Patrick's Fourth Amendment rights, Plaintiffs must demonstrate that the constitutional right allegedly violated was clearly established to prevail on their claim. *See Saucier*, 533 U.S. at 201. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates the law." *Id.* When officers of reasonable competence could disagree on an issue, qualified immunity should be recognized. *See Malley*, 475 U.S. at 341. Plaintiffs have not cited any authority to establish the failure to render medical aid to Patrick violated a clearly established Fourth Amendment right. Under the circumstances presented, reasonable officers could have disagreed about whether it was appropriate to transport Patrick to the detention facility rather than to a hospital against his wishes. *Cf. Salazar*, 940 F.2d

9

at 242 ("What the plaintiff is arguing for is mandatory transportation to a hospital for all intoxicated accident victims, regardless of whether they appear to be injured, and regardless of their consent of lack of consent. This is something the Constitution does not require."). Accordingly, even if Plaintiffs had satisfied the first prong of the qualified immunity test, they would be unable to satisfy the "clearly established" prong. *Cf. Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (noting that officials are liable for "transgressing bright lines" and not for "bad guesses in gray areas") (quotation omitted). Therefore, the Court grants Defendants' motion as to Plaintiffs' Fourth Amendment claims against Officers Lewis and Wilson.

**B.    Fourteenth Amendment**

The law recognizes deliberate indifference to a prisoner's serious medical needs as an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Under the Fourteenth Amendment, pretrial detainees are entitled to at least as much protection as under the Eighth Amendment. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). To establish a constitutional claim arising from deliberate indifference to medical needs, Plaintiffs must establish that (1) Patrick suffered from an objectively serious medical need, and (2) the individual defendants knew of the need, yet deliberately disregarded it. *Id*. Deliberate indifference requires proof of a reckless disregard of a known risk. *Coleman v. Parkman*, 349 F.3d 534, 539 (8th Cir. 2003). A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997); *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991). Deliberate indifference must be viewed from the defendant's perspective at the time in question, "not with hindsight's perfect vision." *Jackson v. Everett*, 140 F.2d 1149, 1151 (8th Cir. 1998).

Plaintiffs argue that Defendants knew of, and were deliberately indifferent to, Patrick's serious medical needs. As should be clear from the Court's Fourth Amendment analysis, this record does not permit a finding that Officers Lewis and Wilson were deliberately indifferent to Patrick's serious medical needs during the arrest and booking of Patrick. The Court turns to Plaintiffs' remaining Fourteenth Amendment claims.

First, Plaintiffs argue that Office Chmelar demonstrated deliberate indifference during her overnight shift by allegedly ignoring Patrick's pleas for help. Plaintiffs rely primarily on the testimony of a detainee in a cell nearby that someone cried out for help and banged on his door in a manner that could have been heard by Officer Chmelar.[5] On the record before the Court, however, Plaintiffs cannot support this claim because there is no evidence that Chmelar actually heard this call for help. In fact, Officer Chmelar testified to the contrary. Therefore, Plaintiffs cannot demonstrate that Officer Chmelar possessed the requisite state of mind to be deliberately indifferent. Moreover, even though Officer Chmelar did shut the "lid" on Patrick's cell door, the record establishes that she checked on Patrick routinely throughout the night and witnessed Patrick switch sleeping positions and move around in his room. Officer Chmelar even had a brief conversation with Patrick, during which he did not indicate a need for medical aid. Based on these facts, Plaintiffs cannot establish that Patrick displayed an objectively serious medical need because he was not diagnosed as requiring treatment and his injuries at the time were not so obvious so as to permit a lay person to easily recognize the necessity for medical attention. In addition, Plaintiffs cannot establish that Officer Chmelar knew of Patrick's serious medical condition and deliberately disregarded it. Thus, there can be no constitutional violation and Office Chmelar is entitled to qualified immunity.

---

[5]  Patrick was one of two people in custody that night.

Second, Plaintiffs argue that Officer Wilson exhibited deliberate indifference when he returned to work on the morning of June 8, 2003. Specifically, Plaintiffs allege that between 6:00 a.m. and 6:05 a.m., Officer Wilson checked on Patrick and observed that it "looked like he wasn't breathing." Plaintiffs further allege that Officer Wilson assisted another inmate make a phone call before he reported Patrick's condition to Lt. Eckman, thereby delaying medical aid to Patrick by twenty to twenty-five minutes. While the parties sharply dispute the events of the morning of June 8, 2003, Plaintiffs have raised a genuine issue of fact as to whether Officer Wilson delayed in seeking aid for Patrick after discovering that Patrick appeared not to be breathing. Viewing the record in the light most favorable to Plaintiffs, a reasonable fact finder could conclude that Officer Wilson observed Patrick was not breathing, assisted another inmate in making a phone call, and then sought assistance for Patrick. Thus, under the facts presented, Plaintiffs could succeed on their claim that Officer Wilson violated Patrick's Fourteenth Amendment rights on the morning of June 8. In addition, the right of a detainee to medical care when it is known that failing to provide care would put the detainee at risk of serious harm is a clearly established right. *See, e.g.*, *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456-57 (8th Cir. 1993). Therefore, Officer Wilson is not entitled to qualified immunity for his actions on the morning of June 8.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 42] is GRANTED IN PART and DENIED IN PART.

2. Count One of the Second Amended Complaint is DISMISSED WITH PREJUDICE as to Defendants Officer Lewis and Officer Chmelar.

3. Count One of the Second Amended Complaint is DISMISSED WITH PREJUDICE as to Defendant Officer Wilson except as it relates to his actions on the morning of June 8, 2003.

4. Counts Two, Three, and Four are DISMISSED WITH PREJUDICE.

Dated: October 28, 2005

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge